(9 Misc. Rep. 260.)

### STACK v. CITY OF BROOKLYN.

(City Court of Brooklyn, General Term. June 25, 1894.)

STATUTES—GENERAL OR SPECIAL ACT.

Laws 1887, c. 348, which was incorporated in the revised charter of Brooklyn (Laws 1888, c. 583, tit. 11, § 5), provided that, in cities having less than 800,000 population, the police force shall be divided into three grades, and the pay shall be fixed by "the board of estimate of the city of Brooklyn" according to such grades. *Held*, that though the act of 1887, in some of its terms, appears to be applicable to all cities of a certain population, the context shows that it is applicable only to the city of Brooklyn; and therefore it was not, when the census showed that the population of Brooklyn exceeds 800,000, superseded by Laws 1884, c. 182, fixing the pay of the police force in all cities "having, according to the last census," a population exceeding 800,000.

Appeal from trial term.

Action by Thomas W. Stack against the city of Brooklyn. There was a judgment in favor of defendant, and plaintiff appeals. Affirmed.

Argued before VAN WYCK and OSBORNE, JJ.

John A. Quintard, for appellant.

Almet F. Jenks, for respondent.

VAN WYCK, J. If the revised charter of Brooklyn (Laws 1888, c. 583, tit. 11, § 5) was not superseded by chapter 182 of the Laws of 1884, when the census showed Brooklyn to be a city of over 800,000 inhabitants, then the judgment appealed from must be affirmed. Section 5 of this charter grades the patrolmen of the police force of this city according to their term of service, as follows: Those having served over three years shall be members of the first grade, those under three years and over one year shall be members of the second grade, and those under one year shall be members of the third grade,—and authorizes the board of estimate of the city of Brooklyn to fix their annual salaries at a sum not to exceed $1,200 for the first grade, $1,100 for second grade, and $1,000 for the third grade. The board of estimate has fixed their annual salaries at $1,100, $900, and $800 for the first, second, and third grades, respectively. The law of 1884 (chapter 182) grades the police force in the same manner, and fixes the salary for each grade at the maximum sum to which section 5 of the revised charter authorizes the

Brooklyn board of estimate to raise the salaries of policemen. The act of 1884, according to its title, purports "to regulate the grade and fix the * * * compensation of the police force * * * in all cities of this state having according to the last census, a population exceeding eight hundred thousand." The appellant insists that, when the census showed the population of Brooklyn to exceed 800,000, the charter provision became inoperative, and that this act of 1884 controlled, and at once operated to raise the salaries of the police according to its terms. There is no serious contention that if this charter provision, which is a special and local law, had been adopted as an independent act, and not as a part of the revised charter, which is entitled "An act to revise and combine in a single act all existing special and local laws affecting * * * the city of Brooklyn," it would operate as a repeal of the law of 1884 so far as it affected this city; but it is urged that this charter provision is the incorporation in this charter of chapter 348 of the law of 1887, and that this latter act is a general law intended to apply, not only to Brooklyn, but to other cities of over 500,000 and under 800,000 population. It is plain that this charter provision was taken from the law of 1887, which provides, firstly, that in cities having, according to the last census, over 500,000 and less than 800,000 population, the police force shall be divided into the three grades already mentioned, and then follows the only provision therein relating to compensation, which is quoted here at length:

"The annual pay or compensation of the members of the police-force shall be fixed by the majority of all the members of the board of estimate of the city of Brooklyn, and shall not be * * * greater than the following, namely,—For patrol men of the first grade * * * not to exceed twelve hundred dollars per annum each; for patrol men of the second grade, at a rate not to exceed eleven hundred dollars per annum each; for patrol men of the third grade at a rate not to exceed one thousand dollars per annum each; for * * * doormen * * * at a rate not to exceed nine hundred dollars per annum each."

It is true that this act, in some of its terms, purports to be a general act applicable to all cities of a certain population, but the context clearly shows it to be a special and local one, affecting only the city of Brooklyn. The clause quoted in relation to the compensation, which, by its terms, expressly applies to Brooklyn, and cannot apply to any other city, is the very substance of this act, and clearly excludes any legislative intent that the act should apply to any other city. The grading of the police was a simple incident or basis which was necessary to give force to the salary clause that applies only to Brooklyn. The act cannot have any real application to other cities without further legislative action in reference to the compensation of their respective police forces. If the act of 1887 was denuded of the compensation clause relating to this city only, it would become a lifeless skeleton of fleshless and marrowless bones, and powerless to help or harm any one. That this is a local and special act, and was so intended to be, cannot be escaped unless the vital part of its context must yield to an incident thereto which happened to be couched in terms of a general law. The incorporation of this law in the charter of 1888, "An act to revise and combine

in a single act all existing special and local laws affecting * * * the city of Brooklyn,"—was an expressed declaration of the legislative intent that it was not a general law. The law of 1887, re-enacted in section 5 of the charter of 1888, was intended to be a complete provision on the subject, so far as Brooklyn was concerned, till further legislative action. It is well settled that, in a conflict between the provisions of a general law and those of a special and local law, the nullification by the former of the latter, so far as the special location is concerned, is not favored, and will not be implied without the legislative intent so to do is apparent and clear. McKenna v. Edmundstone, 91 N. Y. 231; Whipple v. Christian, 80 N. Y. 523; Van Denburgh v. Greenbush, 66 N. Y. 1; People v. Quigg, 59 N. Y. 88; End. Interp. St. §§ 223, 228.

Our conclusion that the compensation of the patrolmen is still regulated by the revised charter renders it unnecessary to consider the contention of the respondent that the words "according to the last census" in the law of 1884 (chapter 182) limited its application to cities having such population according to the census of 1880. The judgment must be affirmed, with costs.